UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

Case # 15-CR-98-FPG-HKS-3

DECISION AND ORDER

AUGUSTUS KIDD,

                Defendant.

## INTRODUCTION

Defendant Augustus Kidd, one of twelve defendants in *United States v. Myers*, has moved to dismiss his case[1] under the Speedy Trial Clause of the Sixth Amendment, the Speedy Trial Act ("STA"), and the Due Process Clause of the Fifth Amendment. ECF No. 362. Additionally, Defendant has moved to sever his trial. ECF No. 353. For the reasons stated below, Defendant's motions are DENIED.

## DISCUSSION

**I.    Sixth Amendment Claim**

The Sixth Amendment instructs that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. Pursuant to that guarantee, Defendant claims that the duration of his current pretrial incarceration has violated his constitutional right to a speedy trial. As a result, he seeks to have the charges against him dismissed with prejudice.

In *Barker v. Wingo*, 407 U.S. 514 (1972), the Supreme Court laid out a four-factor balancing test to guide the analysis of speedy trial claims. The relevant considerations identified

---

[1] The Court assumes the parties' familiarity with the facts and history of this case.

1

in *Barker* are: (1) "[l]ength of delay"; (2) "the reason for the delay"; (3) "the defendant's assertion of his right"; and (4) "prejudice to the defendant." *Id.* at 530. Upon review of these factors, Defendant's Sixth Amendment claim fails.

### A. Length of Delay

The *Barker* Court described the length of delay as a "triggering mechanism"—a court need not engage in substantive analysis if the contested delay is not long enough to be presumptively prejudicial. *See id.* Apart from that threshold "triggering" role, the length of delay also functions as one of the four *Barker* factors to be afforded weight. *See Doggett v. United States*, 505 U.S. 647, 651–52 (1992); *see also United States v. Moreno*, 789 F.3d 72, 82 n.10 (2d Cir. 2015). In that respect, if the length of delay is deemed presumptively prejudicial—triggering the *Barker* analysis—the question becomes "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *See Doggett*, 505 U.S. at 652; *see also Moreno*, 789 F.3d at 82 n.10. In both of these roles, the length-of-delay factor is somewhat circumstance-dependent. *See Barker*, 470 U.S. at 530–31 (contrasting the delay permitted "for an ordinary street crime" with the greater delay tolerable "for a serious, complex conspiracy charge"); *see also United States v. Cain*, 671 F.3d 271, 296 (2d Cir. 2012) (reasoning that a delay "of less than 22 months" was "understandable given the presence of multiple defendants, the large number of allegations and the complexity of the racketeering case").

Here, the length of delay triggers further analysis, but—in terms of *Barker*'s balancing test—it weighs only slightly against the Government. Courts have generally deemed delay "approach[ing] one year" sufficient to trigger a *Barker* analysis. *See Doggett*, 505 U.S. at 652 n.1. As of today, Defendant has been incarcerated for over 36 months. However, the two-count indictment in this case charges Defendant and eleven co-defendants with conspiracy (1) "to possess with the intent to distribute, and to distribute, 280 grams or more of a mixture and substance

containing cocaine base"; and (2) "to use and maintain a place . . . for the purpose of manufacturing, distributing, and using cocaine base." *See* ECF No. 1. Given the number of defendants and nature of the charges against them, this case is complex enough that the length of delay cannot weigh heavily against the Government. *See, e.g.*, *Cain*, 671 F.3d at 296 (assigning a "neutral" weight to the first *Barker* factor in a multi-defendant, complex RICO case); *see also United States v. Alvarez*, 541 F. App'x 80, 84 (2d Cir. 2013) (summary order) (weighing the nearly 29-month delay "only modestly" in the defendant's favor "given the nature of th[e] conspiracy prosecution, with multiple defendants, allegations spanning multiple years and states, and voluminous discovery, including thousands of intercepted phone calls (many in Spanish)").

Defense counsel attempts to minimize this matter, claiming: "The court and government had a responsibility to ensure that this simple case was tried promptly. They failed." *See* ECF No. 362, at 5. But that argument is directly contradicted by defense counsel's own filings: in Defendant's Second Motion for Extension of Time (ECF No. 147), defense counsel described her months of involvement in the case as "less than ample time to review all of the voluntary discovery in this matter," citing "the dearth of time involved . . . compared with the volumes [sic] of raw data in the discovery materials," ECF No. 147, at 5. Tellingly, Defendant's former counsel also noted the "staggering quantity and nature of discovery" and reiterated "the complexity and quantity of [the] discovery materials." *See* ECF No. 47, at 3; *see also* ECF No. 100, at 2–3 (citing "the thousands of pages of discovery" and need "to allow counsel to review the massive discovery materials," including "thousands of pages of calls and text messages"). In short—and in defense counsel's own words—she perceived the task of reviewing discovery and timely filing her motion papers to be "Herculean." ECF No. 147, at 5. Moreover, in her affirmation accompanying Defendant's Third Motion to Set Conditions for Release (ECF No. 293), defense counsel "conceded that [Defendant's] case is intricate." ECF No. 293, at 5. Accordingly, her argument for

the purported simplicity of this case falls flat, and this factor weighs only slightly against the Government.

B. **Reason for Delay**

The Second Circuit has observed that, while no one *Barker* factor is independently dispositive, the reason-for-delay factor "is often critical" in the analysis of a speedy trial claim. *Moreno*, 789 F.3d at 79. The *Barker* Court differentiated between three types of delay: (1) deliberate; (2) neutral; and (3) valid. *See Barker*, 407 U.S. at 531. Each type of delay is assigned a different weight under the *Barker* analysis. *Id.* Deliberate attempts to hamper the defense weigh heavily against the Government. *Id.* Neutral factors, like "negligence and overcrowded courts," weigh against the Government, but not as heavily. *Id.* (reasoning that "the ultimate responsibility for such circumstances must rest with the [G]overnment rather than with the defendant"). "Valid reason[s], such as a missing witness," justify the corresponding delay and do not weigh against any party. *See id.*; *United States v. Tigano*, 880 F.3d 602, 612 (2d Cir. 2018).

Here, the reason for the delay weighs, at most, only slightly against the Government. There is no evidence that the Government deliberately attempted to cause any delay. To the contrary, a large portion of the delay appears to be attributable to motion practice by Defendant and his codefendants, many of whom—including Defendant—continued to request extensions of time for their pretrial motions. *See, e.g.*, *United States v. Holley*, 638 F. App'x 93, 96 (2d Cir. 2016) (summary order) (contrasting delay created by "bad faith or negligence on the part of the [G]overnment" with delay "attributable to motion practice by [the defendant] and his codefendant"). It does not appear that Defendant ever opposed the various modifications of the governing scheduling order, nor did those modifications prompt him to seek severance from his co-defendants. At most, the Court's periods of consideration and resolving other matters—

including issues with co-defendants—comprise some combination of "neutral" and "valid" delay that weighs only slightly against the Government.

Defense counsel also claims that the Government "represented to the court and defense counsel on numerous occasions that it was in the process of superseding this indictment," which caused her "to delay submitting pre-trial motions expecting a superseding RICO indictment." ECF No. 362, at 5. As the Government notes, defense counsel points to nothing in the record to support that suggestion. *See* ECF No. 368, at 17. Indeed, in her first motion for an extension of time to file pretrial motions (ECF No. 118, erroneously titled "Motion to Adjourn Sentencing"), defense counsel sought a 60-day extension based on her "need . . . to familiarize [her]self with the voluntary discovery produced." *See* ECF No. 118, at 2. Moreover, in that same motion, she acknowledged that Defendant's prior counsel had already filed a number of pretrial motions. *See id.* After the first extension was granted, defense counsel filed a second motion for an extension of time, already discussed *supra*, in which she sought an additional 30 days based on her inability "to complete the motion papers . . . due to time constraints placed upon her by other matters of his [sic] practice, and by virtue of her late entrance into this matter." *See* ECF No. 147, at 5. After Magistrate Judge Schroeder denied that motion, *see* ECF No. 148, Defendant then filed a Motion for Joinder in Motions (ECF No. 154). Thus, while defense counsel neglects to mention her former rationale now—per the record—her requests for extensions were apparently based on her need to familiarize herself with the case and parse through the voluminous discovery.

    **C.**    **Defendant's Assertion of His Right**

A defendant's assertion of his speedy trial right "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531–32.

5

The *Barker* Court stressed that "failure to assert the right will make it difficult for a defendant to prove he was denied a speedy trial." *Id.* at 532.

Defendant did not assert his speedy trial right to the Court until the status conference on February 5, 2018—nearly 33 months after he was initially detained—which weighs heavily against him. At that same status conference, the Court set a trial date of July 23, 2018 based on the Court's docket and availability of counsel. While defense counsel now suggests (perhaps in error) that a severance motion was also filed at that time, *see* ECF No. 362, at 6, that is simply inaccurate: Defendant's sole severance motion was not filed until May 3, 2018, *see* ECF No. 353. To be sure, Defendant has continued to assert his speedy trial right since February 5, 2018, but the trial date has remained set since that time, and it is now approximately six weeks away. Moreover, since first asserting his speedy trial right, Defendant has continued to file motions that require this Court's consideration, including his Third Motion to Modify Conditions of Release (ECF No. 293) and the instant Motion to Sever (ECF No. 350).

In an apparent attempt to strengthen Defendant's argument for this factor, defense counsel cites *Tigano* to distinguish a defendant's intentions from his counsel's actions. She parrots *Tigano*'s language to argue that Defendant "adamantly, consistently and explicitly raised his speedy trial rights" to her. ECF No. 362, at 6. While Defendant need not necessarily assert his speedy trial right via formal motion, *see Tigano*, 880 F.3d at 617, he must logically assert it to *the Court*—not just to his attorney. The *Tigano* court explained that the defendant "adamantly, consistently, and explicitly raised his speedy trial rights at nearly every appearance he made *before the court*." *Id.* (emphasis added). The *Tigano* court reiterated that the "pattern continued nearly every time Tigano appeared before the district court." *Id.* Consequently, the court reasoned that it was "inconceivable the government was not 'put on notice' that the issue would resurface if Tigano's speedy trial rights were not protected." *Id.* (quoting *Buffalo Amusement*, 600 F.2d at 378).

6

Here—even under defense counsel's account—neither the Court nor the Government was aware that Defendant intended to assert his right until he *actually did so* at the February 5, 2018 status conference. Accordingly, Defendant's failure to actually assert his speedy trial right until that time weighs heavily against him. *See, e.g.*, *United States v. Vasquez*, 918 F.2d 329, 338 (2d Cir. 1990) ("The third factor weighs heavily against appellants. . . . [B]oth defendants waited roughly 22 months before advancing their speedy trial claims, and this hardly renders plausible their contention that an expeditious resolution of their cases was a matter of pressing constitutional importance for them."); *United States v. McGrath*, 622 F.2d 36, 41 (2d Cir. 1980) (weighing the third *Barker* factor against the defendants where they "waited until immediately before trial to file their motion to dismiss on speedy trial grounds").

### D. Prejudice to Defendant

The analysis of prejudice to the defendant should be conducted "in the light of the interests" that the speedy trial right protects: (1) "to prevent oppressive pretrial incarceration"; (2) "to minimize anxiety and concern of the accused"; and (3) "to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. In *Barker*, the Court instructed that the potential impairment of the defense is "most serious . . . because the inability of a defendant to prepare his case skews the fairness of the entire system." *Id.*

#### 1. Prevent Oppressive Pretrial Incarceration

Defense counsel argues that the "dead time" Defendant has spent incarcerated weighs in his favor, citing *Tigano* for the argument that "confinement in local jails" is particularly oppressive. ECF No. 362, at 7. In that same observation, however, the *Tigano* court also referenced the length of the delay. *See Tigano*, 880 F.3d at 618 ("[The defendant's] nearly seven years of pretrial

7

incarceration were egregiously oppressive; we reiterate that this appears to be the longest period of pretrial incarceration we have seen in a speedy trial context in this Circuit. In addition to the sheer passage of time, his confinement in local jails makes those years particularly oppressive."). In that sense, the passage of time is intertwined with the notion of oppressiveness: the longer a defendant is confined in a local jail, the more he is subjected to that jail's inherently difficult conditions, and the more oppressive his stay becomes.

Defendant's incarceration is much shorter than the confinement at issue in *Tigano*. Thus, unless Defendant's facility has uniquely oppressive conditions beyond the norm, his circumstances are not comparable to those in *Tigano*.[2] Defense counsel provides no details regarding Defendant's specific conditions—she cites only the "lack of recreation and rehabilitation programs offered in local facilities." *See* ECF No. 362, at 7. As a result, the instant facts do not present any uniquely oppressive circumstances to be afforded additional weight, short of the general impact of extended pretrial incarceration in a local jail.

### 2. Minimize Anxiety and Concern to Accused

Defense counsel cites two primary sources of anxiety for Defendant: his inability to care for his mother, "who was diagnosed with MS about 16 years ago," and the "weightier . . . concern . . . . [of] the [Government's] threat of a superseding RICO indictment." ECF No. 362, at 8. With respect to the latter—as the Government argues—defense counsel fails to "point to any reference in the record with respect to any such representation by the [G]overnment." ECF No. 368, at 17. While Defendant's general concerns fall within the second interest to be protected, given the lack

---

[2] The Court fully recognizes that the facts in *Tigano* presented "a ceiling, rather than a floor, for Sixth Amendment analysis." *Tigano*, 880 F.3d at 619. The Court does not treat *Tigano* as a threshold standard, but—given Defendant's reliance on *Tigano*—the Court feels compelled to distinguish those facts from the facts at hand.

of further explanation, they do not appear to be significantly greater than those that any defendant incarcerated might suffer.

### 3. Limit Possibility that Defense Will Be Impaired

Defense counsel has pointed to no evidence that Defendant's defense has been impaired by the delay. In fact, she simply dismisses this point, relying on *Tigano* to suggest that this third interest can be disregarded in light of the prejudice to the other two interests. In the most conclusory of terms, she simply states that Defendant "has been impaired by delay." ECF No. 362, at 8. As the *Barker* Court made clear, and as the Second Circuit has echoed, the third interest— impairment of the defense—remains the most serious in the analysis of prejudice. *See Barker*, 407 U.S. at 532; *see also, e.g.*, *Moreno*, 789 F.3d at 81.

Defense counsel cites *Tigano* to argue that "a particularized showing of impaired defense is not required to maintain a Sixth Amendment claim." *See* ECF No. 362, at 8. However, in *Tigano*, the defendant had stronger showings for the first two interests, and he had been detained for nearly seven years. As the *Doggett* Court explained, the potential prejudice to the defense—while, at times, difficult to identify—"increases with the length of delay." *See Doggett*, 505 U.S. at 655–56. While demonstrable prejudice may not always be required, the duration of Defendant's incarceration is much shorter than the extreme length in *Tigano*, and—as discussed—his showings for the first two interests are not particularly strong. *See, e.g.*, *Cain*, 671 F.3d at 297 ("Cain's assertion of prejudice focuses primarily on non-trial-related hardships that resulted from his pretrial detention, such as detriment to his business and family life. . . . [W]e have generally required a showing of some significant trial-related disadvantage in order to establish a speedytrial violation." (internal citations omitted)). Considering this interest in light of the first two, the overall prejudice factor does not carry much weight in Defendant's favor.

### E. Balancing the Factors

In sum, the first, second, and fourth *Barker* factors weigh slightly against the Government, but the third weighs definitively against Defendant. Taking those weights into consideration, the Court finds no violation of Defendant's constitutional right to a speedy trial. Accordingly, his Sixth Amendment claim is DENIED.

## II. Speedy Trial Act

Defendant also argues that the Government has violated the Speedy Trial Act ("STA"). The Act requires a defendant's trial to commence "within seventy days from the filing date" of the indictment. 18 U.S.C. § 3161(c)(1). However, the Act allows courts to exclude time periods from the 70-day calculation for a variety of reasons. *Id.* § 3161(h)(1)–(8). Defendant argues that his scheduled trial date of July 23, 2018 is "32 days in violation of the defendant's right to due process and a speedy trial." ECF No. 362 at 7. Defendant has apparently conflated the Fifth Amendment, the Sixth Amendment, and the Speedy Trial Act, because only the latter imposes a strict deadline by which trial must commence. The Court accordingly interprets Defendant's argument to be that his scheduled trial date falls 32 days after the STA's 70-day period.

Although the period between Defendant's indictment and his July 2018 trial date has clearly exceeded 70 days, most of this period is properly excludable from STA calculations. As relevant here, the STA allows for "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." *Id.* § 3161(h)(6). In other words, courts may impute delays requested by codefendants to all defendants. Additionally, the filing of pretrial motions tolls the speedy trial clock. *Id.* § 3161(h)(1)(D). Finally, a catch-all "ends of justice" speedy trial continuance applies if a court finds that the ends of justice in granting the continuance "outweigh the best interest of the public and the defendant in a speedy trial." *Id.* § 3161(h)(7)(A). Notably, the STA "does not include the

defendant's consent among the factors a court must consider in weighing whether the ends of justice would be served by granting a continuance." *United States v. Lynch*, 726 F.3d 346, 355 (2d Cir. 2013).

All three of these exceptions to the STA explain the delays in Defendant's case. *See, e.g.*, ECF Nos. 44, 83–84, 96. Defendant did not object to any of the Court's STA exclusions until February 5, 2018, at which point he objected to the Court invoking the "ends of justice" exception. *See* ECF No. 291. The STA, however, did not require the Court to consider Defendant's objection, *see Lynch*, 726 F.3d at 355, and before February 2018, Defendant assented in all of his codefendants' numerous requests for adjournments and extensions to file motions. Defendant himself moved for adjournments and extensions on multiple occasions, including after he retained new counsel. *See* ECF No. 118. After reviewing the record of STA exceptions granted in this case, the Court cannot discern the basis for Defendant's claim that his trial date is "32 days in violation" of the speedy trial clock. Defendant does not explain his calculations, nor are they apparent from the record, which instead indicates that Defendant's trial date is well within the STA's 70-day period. Accordingly, Defendant's STA claim is DENIED.

### III. Fifth Amendment Due Process Claim

Defendant also argues that his pretrial detention violates the Due Process Clause.[3] Pretrial detention "satisfies due process only if its purpose is regulatory rather than punitive." *United States v. Briggs*, 697 F.3d 98, 101 (2d Cir. 2012). Permissible regulatory purposes include "preventing

---

[3] Although Defendant argues that his pretrial detention violates the Due Process Clause of the Fourteenth Amendment, ECF No. 362 at 2, the Court will assume he meant to refer to the Fifth Amendment Due Process Clause. *See United States v. Salerno*, 481 U.S. 739, 746 (1987).

danger to the community" and ensuring a defendant's "presence at trial." *Id.* To determine if pretrial detention has transgressed from regulatory to punitive, the Second Circuit considers three factors: (1) the strength of the evidence justifying detention; (2) the Government's responsibility for the delay in proceeding to trial; and (3) the length of the detention itself. *Id.*

Defendant's Motion to Dismiss seems to confuse and combine his due process argument with his Sixth Amendment argument, but the substance of his contentions at least addresses the second and third elements of the three-factor due process analysis. Turning to the second factor, Defendants themselves—and not the Government—are largely responsible for the delay in proceeding to trial because they have repeatedly asked the Court for extensions. These extensions were necessary because Defendants had to view an inordinate amount of material to prepare their defenses and were only allowed to so in the presence of their lawyers, many of whom lived far away from their clients. Not once did Defendant object to the Court's granting of these extensions. Indeed, the Second Circuit has acknowledged that long detentions may be "justified in part by 'the inherent complexities of . . . large multi-defendant case[s], which present[] defense counsel with voluminous discovery to absorb and the court with myriad motions to address." *Id.* at 102 (quoting *United States v. Hill*, 462 F. App'x 125, 127 (2d Cir. 2012) (summary order)). These complexities are undoubtedly present in the instant case. The second factor therefore disfavors Defendant.

The third and final factor, the length of the detention itself, "is not dispositive and will rarely by itself offend due process." *United States v. El-Hage*, 213 F.3d 74, 79 (2d Cir. 2000). Because there is "no bright-line limit on the length of detention that applies in all circumstances," *Briggs*, 697 F.3d at 103, every "case must be examined on its own facts." *United States v. ElGabrowny*, 35 F.3d 63, 65 (2d Cir. 1994) (citing *United States v. Gonzales Claudio*, 806 F.2d 334, 340 (2d Cir. 1994)).

The facts here do not suggest that Defendant's pretrial detention period, by itself, offends due process. Defendant has been detained for more than 36 months, and if his case is not resolved before his July 23, 2018 trial date, his total pretrial detention period will have exceeded 38 months. The Court recognizes that this is an undoubtedly long period of time, but the Second Circuit and other courts in this district have held that much longer pretrial detention periods did not violate the Due Process Clause. *See, e.g.*, *United States v. Rounds*, 619 F. App'x 40, 41 (2d Cir. 2015) (summary order) (holding that the defendant's 65-month pretrial detention period did not violate his due process rights because the delay was largely attributable to the defense); *United States v. Jones*, No. 12-CR-125W, 2015 WL 4644527, at *6 (W.D.N.Y. Nov. 10, 2015) (holding that a pretrial incarceration period of 32 months, with the potential to last more than five years, did not violate the defendant's due process rights because the delay was largely attributable to the defendant and his co-defendants) *adopted in relevant part by United States v. Jones*, 143 F. Supp. 3d 78, 87 (W.D.N.Y. 2015).

In *Jones*, the Court acknowledged that only serious crimes such as "bank robbery, racketeering, a continuing criminal enterprise, [or] drug crimes" justify especially long pretrial detention periods. *Id.* Even after admitting that the alleged crime in that case—conspiracy to commit wire fraud—was not such a crime, the Court still upheld the defendant's pretrial detention period, which the court predicted to last as long as five years, on due process grounds. It did so largely because the defendant continually consented to his co-defendants' requests for extensions. Given the outcome in *Jones*, the instant Defendant's pretrial detention period withstands due process scrutiny even more clearly. As in *Jones* and as explained throughout this opinion, Defendant never objected to his co-defendants' requests for extensions, and he moved for an extension himself after retaining new counsel. But, unlike the defendant in *Jones*, Defendant here is accused of dangerous criminal activity, which justifies a longer pretrial detention period than the wire fraud charges in *Jones*. As

Magistrate Judge Schroeder stated in Defendant's detention order, the drug charges facing Defendant create "a presumption of danger to the community" under the Bail Reform Act of 1984. ECF No. 25, at 3. Magistrate Judge Schroeder also considered Defendant's extensive criminal history and his "propensity for engaging in criminal activities" when he initially ordered his detention, finding that there were "no reasonable terms and conditions" that "would reasonably assure the safety of the community." *Id.*

This brings the Court back to the ultimate inquiry that it must make in determining whether Defendant's due process rights have been violated: whether his detention still serves a permissible purpose. Defendant has not argued that the circumstances initially justifying his detention have changed or that he could be released without risking the safety of public. Consequently, the Court has no reason to doubt that Defendant's continued pretrial detention is still furthering the important and permissible regulatory purpose of preventing danger to the community. Defendant's due process claim is therefore DENIED.

## IV.    Motion to Sever

In addition to his Motion to Dismiss, Defendant has also filed a Motion to Sever, arguing that "statements made by the codefendant" Matthew Johnson at trial "will irreparably prejudice" him and that Defendant has the right to pursue a trial strategy of "posit[ing] blame with the remaining codefendant for any conspiracy, drug dealing and sales which may be attributed to" Defendant. ECF No. 353 at 2. Defendant's unsupported assertions cannot overcome the "strong preference in the federal system for joint trials of defendants who are indicted together," *Zafiro v. United States*, 506 U.S. 534, 537 (1993), which is particularly strong when "the defendants are alleged to have participated in a common plan or scheme," as in the present case. *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998). This preference stems from the commonly-held belief that joint trials "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of

inconsistent verdicts.'" *Zafiro*, 506 U.S. at 537 (quoting *Richardson v. Marsh*, 481 U.S. 200, 210 (1987)). This preference also acknowledges "the inevitable tolerance of some slight prejudice to codefendants, which is deemed outweighed by the judicial economies resulting from the avoidance of duplicative trials." *United States v. Cardascia*, 951 F.2d 474, 482–83 (2d Cir. 1991).

To overcome the courts' preference for joint trials, a defendant must show that "substantial prejudice" would result from a joint trial. *United States v. Werner*, 620 F.2d 922, 928 (2d Cir. 1980). Substantial prejudice means that "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539. Unsupported, conclusory allegations of prejudice—such as those that Defendant has raised—are insufficient to warrant severance. *See, e.g.*, *United States v. Feola*, 651 F. Supp. 1068, 1122 (S.D.N.Y. 1987) ("Here, defendants have merely offered the conclusory assertion . . ."); *United States v. Haim*, 218 F. Supp. 922, 931 (S.D.N.Y. 1963) ("The defendant . . . has made no more than the unsupported assertion that the joinder is prejudicial to her rights."). Defendant has not identified any prejudicial statements made by co-defendants, and the Government has stated that if any such statements exist, it will sanitize them to remove any prejudicial effect. *See* ECF No. 361 at 3. Additionally, Defendant has not explained how a joint trial with Johnson would inhibit his ability to pursue a trial strategy of "positing blame" with Johnson or how pursuing that strategy in a joint trial would substantially prejudice him. *See Zafiro*, 506 U.S. at 540 (rejecting the theory that mutually antagonistic defenses are prejudicial per se and reasoning that any risk of prejudice could be cured with proper jury instructions). Accordingly, Defendant's Motion to Sever is DENIED.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss (ECF No. 362) and Motion to Sever (ECF No. 353) are DENIED.

IT IS SO ORDERED.

Dated: June 6, 2018
     Rochester, New York

                                                  HON. FRANK P. GERACI, JR.
                                                  Chief Judge
                                                  United States District Court